is not imputable to culpable neglect, and, therefore, that the amount of those claims ought to be deducted from the said decree of 3d of June, 1811, and that the plaintiff is entitled to an assignment, without recourse, from the administrator of Elliott Muse, of the said claims. 2dly. That the estate of Thomas Muse, is still responsible to the plaintiff, for that part of said decree of the 3d of June, 1811, that ought to have been paid by the said Thomas Muse, but that the estate of Thomas Muse is not responsible for more than the two sums of $2411.54, of the 13th of March, 1813, and $1602, of the 19th of June, 1813, charged to that estate, by Elliott Muse, in his account of his administration, on the estate of Thomas Muse, as the proportion of the said decree, payable by that decree. 3dly. That as it manifestly appears, that the estate of Elliott Muse, is, on account of his administration of the estate of Thomas Muse, indebted to that estate in a larger sum than is chargeable on Thomas Muse's estate, for the proportion of the plaintiff's claim, payable by Thomas Muse; and the responsibility of Elliott Muse's, to Thomas Muse's estate, being a debt of the first dignity, the estate of Elliott Muse should, as far as the assets extend, be, in the first instance, subjected to the payment of the plaintiff's claim, to the exoneration of the estate of Thomas Muse. And it appearing by a statement made, from the papers in the case, (which statement is marked "statement for final decree," and is received as a statement made by a commissioner,) that the balance due the plaintiff, after deducting the said claims of £429. 9s., and subsequent payment is $4735.32, with interest from 20th November, 1821, till paid; that the responsibility of the estate of Thomas Muse, for the said two sums of $2411.54, and $1602, in 1813, exceed the said balance due the plaintiff; that the amount of assets, for which the administrator of Elliott Muse is chargeable, is $3608.35 with interest on $3218.36, from 20th November, 1821: The court doth adjudge, order, and decree, that the defendant, Z. U. Crittenden, administrator, do, out of the assets of his intestate, &c., if so much thereof he hath, and if not, out of his own proper goods and chattels, pay to the plaintiff, $3608.35 with interest, on $3218.36, from 20th November, 1821, till paid, and one moiety of the costs of this suit: that the defendant, Robert Blakey, administrator of Thomas Muse, do out of the assets of his intestate in his hands, &c., if not, then out of his own proper goods and chattels, pay to the plaintiff, the sum of $1126.97 with interest, from 20th November, 1821, till paid, and the other moiety of the costs. And the court doth further order, &c., that Z. U. Crittenden, administrator of Elliott Muse, survivor of Thomas and Elliott Muse, administrator, with will annexed, of Hudson Muse, do assign to the plaintiff, or her duly authorized attorney, the said claims,

evidenced by the said abstracts of records, marked Z and Y; but the assets to be without recourse against Crittenden. And liberty is reserved to the plaintiff, to apply to the court for a further decree against the administrator of Thomas Muse, for so much of the amount hereby decreed to be paid by the administrator of Elliott Muse, as the plaintiff may fail to obtain on that decree, from that administrator, or those responsible for his due administration of the assets of his intestate.

COBANKS v. The MIDLAND. See Case No. 12,068.

## Case No. 2,919.
### COBANKS v. The ROSLYN.

[The case reported under above title in 23 Int. Rev. Rec. 176, is the same as Case No. 12,068.]

## Case No. 2,920.
### In re COBB.

[1 N. B. R. (1868) 414 (Quarto, 106);[1] 1 Am. Law T. Rep. Bankr. 59.]

District Court, D. Indiana.

BANKRUPTCY—EXEMPTION—"HEAD OF FAMILY."

1. Section 14 of the bankrupt act [of 1867 (14 Stat. 522; Rev. St. § 5045)] must be so construed that over and above the necessary household and kitchen furniture, the assignee may, in his discretion, exempt, in favor of the bankrupt, "such other articles and necessaries" as he may think right, so that such exemption, together with the household and kitchen furniture allowed to be retained by him, shall not exceed $500.

2. The fact that the wife may have, as her separate property, household and kitchen furniture in use in the house in which the bankrupt resides, can make no difference as to the amount of exempt property to be allowed him.

3. The bankrupt is also entitled to retain $300 worth of real or personal property as the exemption allowed by the state where he resides.

4. The assignee must select the property to be exempt under the bankrupt law, and should refuse to set apart mere articles of luxury, as gold watches or pianos, &c.

[Cited in Re Steele, Case No. 13,346.]

5. The bankrupt may select the property exempt under the state law, and it is for him to choose or reject articles of mere luxury.

[6. Cited in Re Taylor, Case No. 13,775, to the point that, to constitute a head of a family, it is not essential that a man shall have either a wife or child; it is enough if his household consist of hired servants.]

In the course of proceedings in this case, the question arose upon the setting apart, by the assignee, property under the exemption clause of the bankrupt law, and came before the judge for his decision.

McDONALD, District Judge. In June last, Van Buren Cobb, of Morgan county, Indi-

---

[1] [Reprinted from 1 N. B. R. 414 (Quarto, 106), by permission.]